IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUBY COLDWATER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-1236-STE |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued a decision finding Plaintiff was not under a disability, as defined by the Social Security Act, from April 15, 2014, Plaintiff's alleged

onset date, through December 31, 2016, the date Plaintiff was last insured (DLI). (TR. 18-32). The ALJ additionally found that Plaintiff had a prior application for disability insurance benefits that was denied on February 12, 2015, and not timely appealed. Finding that the previous determinations were final and binding, the ALJ determined that Plaintiff's current application would only consider the time period from February 12, 2015, forward. (TR. 18). The Appeals Council denied Plaintiff's request for review. (TR. 1-8). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016, and had not engaged in substantial gainful activity since April 15, 2014, the date of Plaintiff's alleged onset. (TR. 20). At step two, the ALJ determined that, through the date last insured, Plaintiff had the following severe impairments: renal cancer status post right partial nephron sparing nephrectomy, essential hypertension, and obesity. (TR. 21). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 22).

At step four, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work. (TR. 23). The ALJ further found that Plaintiff was capable of performing her past relevant work as a grant writer, research and evaluation director, college dean, alumni relations director, and an insurance

benefits clerk. (TR. 31). The ALJ concluded that Plaintiff was not disabled at any time from April 15, 2014, through December 31, 2016. (TR. 32).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficient evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal citation, alteration, and quotation marks omitted). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### IV. ISSUES PRESENTED

On appeal, Plaintiff alleges the RFC is not supported by substantial evidence and the ALJ erred in considering evidence of chronic fatigue and coronary artery disease. (ECF No. 13:3-12, 12-14).

3

## V.  ANALYSIS

As an initial matter, the Court is mindful of the time period under consideration. As set forth above, the ALJ determined that Plaintiff's current application would only consider the time period from February 12, 2015, forward and further determined that Plaintiff's date last insured was December 31, 2016. Accordingly, Plaintiff needed to establish disability between February 13, 2015 and December 31, 2016 to be entitled to benefits. *See* TR. 18-19; 20 C.F.R. § 404.957(c)(1) (res judicata precludes ALJ from reconsidering previous determinations); *Wilson*, 602 F.3d at 1139 (claimant has burden of proving she was totally disabled on or before the date last insured).

### A.  *Chronic fatigue*

Plaintiff asserts that "the crux of the case" is that the ALJ disregarded Plaintiff's "chronic fatigue" and ignored medical evidence regarding fatigue. (ECF No. 13:3-12). Plaintiff argues that the RFC determination is not supported by substantial evidence because it should have included limitations for Plaintiff's fatigue and edema; specifically, Plaintiff asserts the RFC should have included a daily nap. (ECF No. 13:4, 5, 6, 11).

#### 1. Dr. Armor

The ALJ gave "great weight to the treating notes and clinical findings" of Jess Armor, M.D., Plaintiff's oncologist, but Plaintiff asserts that the ALJ improperly ignored medical evidence from Dr. Armor indicating the need for a daily nap. (TR. 29; ECF No. 13:3-6). In reviewing the medical evidence from Dr. Armor, the ALJ discussed medical evidence dated during the time period relevant to this decision (i.e., between February 13, 2015 and December 31, 2016) as well as prior to this time period and after Plaintiff's DLI. *See* TR. 25-27. A claim of disability may be supported by direct evidence or indirect

evidence. Medical records during an insured period are direct evidence of a claimant's condition during that period. *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993). Medical records that post-date the insured period may constitute indirect evidence of a claimant's condition during the insured period and, if so, should also be considered to the extent they provide information about the nature and severity of claimant's condition during the insured period. *See id.*

### a. The ALJ's discussion of medical evidence

The ALJ discussed Plaintiff's initial appointment with Dr. Armor, which occurred prior to the time period considered, noting that Plaintiff was "doing well postoperatively," denied various symptoms of pain and discomfort, and "stated the malaise she experienced had resolved since her surgery . . . and her energy had improved." (TR. 25 (citing TR. 988-92, new patient evaluation on Sept. 16, 2014)). With respect to Dr. Armor's medical records during the relevant time period, the ALJ discussed that Plaintiff reported "she was feeling a little down for a couple of weeks this winter, but was currently doing fine"; "she had been feeling well and that her energy level was stable"; "she was having some allergy symptoms following her recent trip to Colorado, but otherwise felt fine"; and "she was feeling well [and] still working some on her farm"; among other indications that she was doing well. (TR. 25-26 (citing TR. 1002-06, record of Feb. 17, 2015; TR. 1007-11, record of June 16, 2015; TR. 1013-17, record of Oct. 6, 2015; TR. 642-46, record of Apr. 19, 2016)). The ALJ also discussed Dr. Armor's record dated October 11, 2016, noting that Plaintiff "stated she felt fine" and "endorsed mild fatigue

at times, resolved with a short nap." (TR. 27 (citing TR. 1025-29)). This record also indicates that Plaintiff reported she was "[s]till working on her farm." (TR. 1028).

Regarding medical records that post-date her DLI, the ALJ discussed Plaintiff's visit with Dr. Armor on November 28, 2017, in which Plaintiff's most recent CT scan was unremarkable; she stated she felt fine and denied fevers, weight loss, chest pain, shortness of breath, arthralgia, bone pain; and treating notes indicated her hypertension had improved. (TR. 29 (citing TR. 1037-41)). The ALJ also noted that, at this appointment, Plaintiff endorsed occasional edema and chronic mild fatigue. *Id.*[1]

### b. Whether the ALJ ignored medical evidence

Plaintiff argues that the ALJ improperly ignored medical evidence from Dr. Armor, asserting that there should have been limitations in the RFC for chronic fatigue and edema or, because there were not, the ALJ should have explained why. (ECF No. 13:3-6). Plaintiff is incorrect.

One medical record from the relevant time period reflects that Plaintiff said she "felt a little down for a couple of weeks this winter, but is doing fine now" while another indicated that she "feels fine" and has "[m]ild fatigue at times, but resolves [with a] short nap." (TR. 1003 (Feb. 17, 2015), 1026 (Oct. 11, 2016)). These notations of occasional mild fatigue do not, as Plaintiff asserts, create the requirement of "a short nap every day"

---

[1] There are two additional treatment records from Dr. Armor, which the ALJ did not discuss and Plaintiff does not reference in her argument. Neither of these records indicates that Plaintiff was experiencing debilitating fatigue. *See* TR. 996-1000 (Nov. 11, 2014, Plaintiff reported that "she is feeling fine, other than some mild fatigue," and that her "[e]nergy improved[, s]he went to Colorado since her last visit [and is w]orking with cattle now"); TR. 1031-36 (May 9, 2017, Plaintiff's energy was stable).

and the ALJ did not err in determining not to include such limitation in the RFC. *See* ECF No. 13:5. Plaintiff provides no other citations to medical records from Dr. Armor dated within the relevant time period to support her argument that there should have been limitations in the RFC for chronic fatigue.

Instead, Plaintiff relies primarily on the medical record dated November 28, 2017, almost a year after her DLI. This medical record indicates that Plaintiff complained of "[c]hronic mild fatigue" and "occasional edema, if [her] legs have been down," but there were no related diagnoses. (TR. 1037-41; TR. 27). Moreover, the previous medical record from Dr. Armor, dated May 9, 2017, does not mention edema and states that Plaintiff reported her energy was stable. (TR. 1037-41, 1031-36). As such, the November 28, 2017, medical evidence relied on by Plaintiff indicates that she was experiencing fatigue and edema well after her DLI, but it does not provide evidence, direct or indirect, that she experienced such symptoms during the relevant time period. Nor does that medical record provide evidence of limitations that should have been included in the RFC but were not. The Court finds no error in the ALJ's consideration of Dr. Armor's treating notes and clinical findings.

### 2. Dr. Hunninghake

Plaintiff asserts that the statements provided by Ron Hunninghake, M.D., provide support for fatigue-related limitations in the RFC. (ECF No. 13:6-10; TR. 522, 1049-55). Plaintiff takes issue with the ALJ's decision to give these statements minimal weight, and challenges the reasons the ALJ gave for her decision. (ECF No. 13:6-10; TR. 28-29).

### a. December 17, 2017, medical source statement

Dr. Hunninghake is a treating physician and, when evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks and citation omitted).

If controlling weight is declined, the ALJ must assess the opinion under a series of factors including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527(c)(2). Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). If the ALJ rejects an opinion completely, she must give "specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1300 (internal citations omitted).

Here, the ALJ explained that she gave limited weight to the medical source statement Dr. Hunninghake completed on December 17, 2017, because the statement was "not consistent with the evidence as a whole, particularly his own treating notes." (TR. 28). Dr. Hunninghake stated that Plaintiff's employability was limited by her muscle weakness and low endurance, which were caused by fibromyalgia. (TR. 28, 1049-55). But the ALJ discussed at length the multiple inconsistencies she found in Dr. Hunninghake's statement, including:

- Dr. Hunninghake stated that Plaintiff had a two-year history of fibromyalgia syndrome, but there are no corresponding medical records sufficient to establish such a diagnosis;
- Dr. Hunninghake stated that his assessment was supported by Plaintiff's CT scans, x-rays, and bone scans, but the diagnostic imaging did not support his assessment of fibromyalgia;
- There were no detailed physical examinations in Dr. Hunninghake's treatment notes that supported the limitations in the medical source statement;
- There was no evidence that other possible causes of Plaintiff's symptoms were ruled out prior to diagnosing fibromyalgia;[2]
- Dr. Hunninghake stated that Plaintiff's limited postural activity was due to muscle weakness and generalized muscle pain, however, there is no evidence

---

[2] As the ALJ explained at step two of the sequential evaluation process, the SSA requires doctors to exclude other possible causes of symptoms prior to diagnosing fibromyalgia. *See* TR. 21 (citing SSR 12-2p, 2012 WL 3104869, at *3 (July 25, 2012)).

9

that Plaintiff complained of those symptoms to any of her doctors during the relevant period;

- There was insufficient evidence to relate a diagnosis back to 2014 when there was no mention of a medically documented diagnosis of fibromyalgia prior to December 21, 2017, the date of the medical source statement;[3]
- Contrary to the severity of the limitations included in the medical source statement, Dr. Hunninghake's treatment notes from the same day assessed "*mild* chronic fatigue that was under good control;" and
- Though Plaintiff provided a detailed medical history to each of her treating doctors, there is no mention of fibromyalgia in any other treating notes.

(TR. 28-29). The ALJ applied the proper factors and her findings were "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight." *Krauser* 638 F.3d at 1331 (internal quotations marks and citation omitted). The Court finds no reversible error in the ALJ's evaluation of Dr. Hunninghake's December 17, 2017, medical source statement. *See Krauser*, 638 F.3d at 1330-31; *Watkins*, 350 F.3d at 1300-01; *see also Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding "any imaginable oversight" to be "clearly harmless" when ALJ did not expressly say he was not affording treating

---

[3] Though the ALJ explained that the relevant time period for her decision began February 13, 2015, Plaintiff erroneously states that the relevant time period began on April 15, 2014. *Compare* TR. 18-19, with ECF No. 13:7. Plaintiff then cites to medical evidence dated prior to February 13, 2015, and accuses the ALJ of "not read[ing] the entire record." (ECF No. 13:7). Additionally, though Plaintiff accurately recognizes the end of the relevant period as December 31, 2016, she attempts to rely on records from Dr. Hunninghake that post-date Plaintiff's DLI. (*Id.* at 7-8).

physicians' opinions controlling weight but explained that they were entitled to no weight because they were inconsistent with the medical records and there was substantial evidence to support that decision).

### b. April 20, 2015, letter

Dr. Hunninghake also provided a letter, dated April 20, 2015, in which he stated that Plaintiff "reports that in spite of being able to be up around the house, she is very concerned that a regular job would cause deterioration in her health status, which has been very uncertain overall this past year." (TR. 522). Dr. Hunninghake further stated: "Stress and fatigue are triggers now for flank inflammation and pain, and can cause UTI's and gout flares. [Plaintiff] is unable to sustain mental clarity when she fatigues." (*Id.*). The ALJ gave this opinion "little weight," reasoning that:

- The report appears to be based primarily on Plaintiff's subjective statements rather than objective medical findings;

- Dr. Hunninghake did not offer his opinion as to limitations Plaintiff experiences due to her impairments; and

- The statement does not contain a function by function assessment of Plaintiff's limitations, if any, and therefore lacks significant probative value.

(TR. 28). These are all valid reasons for rejecting a treating physician's opinion and the Court finds no reversible error in the ALJ's evaluation of Dr. Hunninghake's April 20, 2015, letter. *See Krauser*, 638 F.3d at 1330-31 (ALJ should consider the degree to which treating physician's opinion is supported by relevant evidence); *Bean v. Chater*, 77 F.3d 1210, 1214 (affirming where ALJ rejected treating physician's opinion because statement about

limitations was "generic and did not accurately assess plaintiff's true functional capabilities" and the opinion "did not offer any specific functional limitation").

### c. State agency physicians

Plaintiff also asserts that the ALJ erred by granting great weight to the State agency physicians without explaining why those opinions received greater weight than the opinions of Dr. Hunninghake. (ECF No. 13:11). While Plaintiff is correct that a state agency physician's is generally entitled to less weight than a treating physician's opinion, an ALJ may give a consultative examiner's opinion more weight as long as she gives a legally sufficient reason for doing so. 20 C.F.R. § 404.1527(c)(1), (2); SSR 96-6p, 1996 WL 374180, at *2-3 (July 2, 1996); *Sissom v. Colvin*, 512 F. App'x 762, 767 (10th Cir. 2013); *cf. Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (holding that the ALJ erred in rejecting a treating physician's opinion in favor of a non-examining consulting-physician opinion "absent a legally sufficient explanation for doing so"). Here the ALJ has done so—she has provided legally sufficient explanations both for the limited weight she gave Dr. Hunninghake's statements and for the great weight she gave the agency physicians. (TR. 27, 28-29).

### 3. Dr. Worthen

Plaintiff's urologist, Rodney L. Worthen, M.D., provided a letter dated March 9, 2015, in which he opined that Plaintiff's "ability and stamina are certainly impaired at this point[.]" (TR. 523). Plaintiff asserts that this statement supports the inclusion of fatigue-related limitations in the RFC. (ECF No. 13:12). As with Dr. Hunninghake's April 20, 2015, letter, this medical opinion lacks specificity and does not assess Plaintiff's functional capabilities. The Court finds no reversible error in the ALJ's determination to give Dr.

Worthen's letter "little weight" as it was vague and lacked significant probative value due to its lack of specific details or function-by-function assessment. *See* TR. 28; *Bean*, 77 F.3d at 1214.

### B.   *Coronary artery disease*

The ALJ considered Plaintiff's hypertension and her history of a heart murmur as well as her complaints of chest pain, but Plaintiff complains that the ALJ failed to consider "other conditions that [hypertension] caused"—primarily coronary artery disease. (TR. 21-27; ECF No. 13:12-14). It is well-established that the claimant "bears the burden of establishing a prima facie case of disability at steps one through four." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2004). As part of her burden, then, Plaintiff "must provide evidence of [her] functional limitations." *Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015).

Plaintiff contends that the ALJ should have discussed her coronary artery disease, but she points to no actual diagnosis of this impairment, has not shown that the record establishes it as a medically determinable impairment, nor has she previously alleged that she had such condition. *See* ECF No. 13:13-14; TR. 43-45, 83-84. More importantly, none of the evidence Plaintiff cites indicates that her hypertension or related conditions caused any functional limitations that should have been included in the RFC but were not. *See* ECF No. 13:12; *Adams v. Colvin*, 553 F. App'x 811, 814-15 (10th Cir. 2014) ("The problem with [plaintiff's] argument [that the ALJ failed to include any limitations related to his impairment] is that the record indicates no functional limitation as a result of [that impairment]."). Though Plaintiff emphasizes various ECG reports, none of those reports

or the associated treating notes evidences any resulting functional limitations. *See* ECF No. 13:12; TR. 528, 531, 816. Accordingly, Plaintiff has not shown that the ALJ erred in her consideration of Plaintiff's hypertension and any related conditions. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (rejecting argument that RFC was not supported by substantial evidence when plaintiff presented no evidence contradicting the RFC).

### C. *Other arguments*

To the extent Plaintiff presents other arguments, the Court finds they are not well-developed and will not address them. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on plaintiff's behalf when argument on an issue is "insufficiently developed").

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on September 30, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE